WEBSTER v. LANUM.

(Circuit Court of Appeals, Second Circuit. February 27, 1905.)

No. 130.

LIMITED PARTNERSHIPS—LIABILITY OF SPECIAL PARTNER—NEW YORK STATUTE.
    Under the New York statute providing for the formation of limited partnerships, which requires the filing of a certificate showing the amount of capital contributed by a special partner, and an affidavit that such capital has been "actually and in good faith paid in in cash," and makes him liable as a general partner in case such certificate or affidavit is false, but contains no provision with respect to the capital of the general partners, nor requirement that the same shall be shown, it is immaterial where a special partner obtains the money which he puts in, if it is actually paid in cash, so that it may be used by the firm as capital, and he is not liable as a general partner because of the fact that the money was furnished to him as a loan or gift by third persons, or by a pre-existing firm merged into the new partnership or its members.

In Error to the Circuit Court of the United States for the Southern District of New York.

Charles N. Morgan, for plaintiff in error.
Paul Armitage, for defendant in error.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error by the defendant in the court below to review a judgment entered for the plaintiff upon the verdict of a jury. The action was brought to

recover an indebtedness owing to the plaintiff by Seymour Johnson & Co., a limited partnership formed under the statute of New York. The partnership was created January 3, 1900, by the filing of the certificate required by the statute, which among other things recited the name of Seymour Johnson & Co. as the firm name, the name of Webster as the special partner, and that the amount of the capital contributed by said special partner Webster was $100,000. In the accompanying affidavit required by the statute, which was filed at the same time, it was recited that the $100,-000 contributed by said special partner Webster had been actually and in good faith paid in cash. Subsequently and February 7, 1900, a certificate was filed reciting that the amount contributed by Webster as special partner had been increased from $100,000 to $200,000, and the affidavit filed therewith recited that such sum had been actually and in good faith paid in in cash. The question litigated upon the trial was whether Webster did contribute and in good faith pay in cash the special capital mentioned in the certificates.

It appeared upon the trial that prior to the formation of the limited partnership some of the general partners had been doing business as a firm by the style of Seymour Johnson & Co.; that the firm was indebted to one Goslin in the sum of $60,000; that an arrangement was made between the members of this firm, Goslin, and one Ammon contemplating the formation of a limited partnership in which Webster was to be the special partner, and Goslin and Ammon should provide the capital which was to be contributed in his name. This arrangement was carried out on January 2d in the following manner: The existing firm drew its check for $60,000 (the amount of its indebtedness to Goslin), and deposited it to the credit of Ammon with the Wells Fargo & Co. Bank, where Ammon had on deposit $40,000; upon the deposit of the $60,000 to the credit of Ammon he made his check upon the Wells Fargo & Co. Bank for $100,000, and handed it to one of the members of the firm; thereupon the firm transferred the check to Webster, and Webster deposited it to his own credit in a bank with which he had an account; and immediately thereafter Webster drew his own check for the same amount upon the bank, and handed it to one of the members of the firm, who had it cashed; and thus the firm received the $100,000 in full. It was a part of the arrangement that Goslin should receive 40 per cent. of the profits of the limited partnership and Ammon 20 per cent. Webster testified that the money (represented by the check handed to him) went to him and through his bank, and his own check went against it, simply to enable him to send the money to the firm of Seymour Johnson & Co., and as far as he was concerned the transaction was merely an accommodation to Mr. Johnson, who told him it would assist the firm. The capital subsequently contributed in the name of Webster, and mentioned in the certificate filed February 7th, was furnished in substantially the same way by Goslin and Ammon, and a detailed statement of the facts respecting that transaction is unnecessary. Some evidence was

given tending to show that Goslin was a member of the pre-existing firm.

The trial judge instructed the jury, in substance, that if they found that the $100,000 which was furnished to Webster, and which Webster put back into the partnership, was money of the firm, or money which Goslin and Ammon had loaned to the firm, Webster had not paid into the capital in good faith the sum of $100,000, and he was liable as a general partner; but if they found that Goslin and Ammon loaned the $100,000 to Webster, so that he became liable to them for the amount, or if they found that Goslin and Ammon gave this amount to Webster, then Webster was not liable. He further instructed the jury, in substance, that if the amount which Webster paid in was loaned to him for that purpose by the firm, or the partners therein individually, they would be justified in finding that he had not paid in the amount in good faith. He also instructed the jury if they found that the defendant went through the form of contributing the special capital to the partnership, and did not actually contribute the amount in cash in good faith to the common stock, the certificates and affidavits filed were false, and their verdict should be for the plaintiff. On behalf of the defendant the trial judge was requested to charge "that the evidence shows that Goslin and Ammon intended it [the $100,000] to be furnished to Webster to be contributed by him as special capital." The court declined so to charge, and submitted the question to the jury whether the evidence so showed.

The principal assignments of error are based upon the exceptions to the instructions thus given or refused. We find no occasion to review the other assignments of error, because upon the undisputed facts, established by evidence which was not objected to, the defendant was or was not liable as a general partner, and the trial judge would have been justified in taking the case from the jury and directing a verdict.

Upon the evidence it was entirely clear that it was the scheme of the members of the pre-existing firm, and of Goslin and Ammon, when they entered into the arrangement by which the capital was to be supplied which was to be contributed in the name of Webster, to constitute Webster a special partner only in name, and, while holding him out to the public as the special partner, to secure for Goslin and Ammon exemption from liability as partners. The scheme contemplated was carried out. The capital to be contributed by the special partner was actually paid in, but it came substantially from Goslin and Ammon or from the pre-existing firm, and only formally from Webster. It was in a sense contributed by him, because it was derived from funds standing in his name on the books of the bank upon which his check was drawn. In effect it was contributed by Goslin and Ammon, or by the firm, because his check was drawn upon funds which they had supplied to him, and which were not his for any other use than as a temporary deposit to be checked out again and handed over to the pre-existing firm. If there was an agreement or understanding between the others that the amount should be regarded as a tem-

porary loan or as a gift to Webster, he was not a party to it, and there was not a scintilla of evidence upon the trial to show that he was informed of such an understanding or regarded himself as under any other obligation to any person than to use it as he did use it. Consequently Webster did not incur any obligation either to Goslin and Ammon or to the pre-existing firm, though he would have incurred one if he had misapplied the check which was intrusted to him.

For the protection of those who may become creditors of the partnership by giving them an opportunity to be informed concerning the facts required to be stated in the certificate, and to prevent misinformation to them, the statute provides that any false statement in the certificate, by the filing of which the limited partnership is created, or in the affidavit accompanying the certificate, shall render the special partner liable as a general partner. The courts of New York treat the statute as remedial in nature, and consider substance rather than form in determining whether its provisions have been complied with. According to these decisions, if the provisions have been substantially complied with, so that those who are entitled to the information which they are intended to afford can suffer no detriment, a departure in literal conformity will not subject the special partner to the liabilities of a general partner. Smith v. Argall, 6 Hill 479; Fifth Avenue Bank v. Colgate, 120 N. Y. 396, 24 N. E. 799, 8 L. R. A. 712; White v. Eiseman, 134 N. Y. 103, 31 N. E. 276. Thus, the statement required in the affidavit, that the sum specified in the certificate has been "actually and in good faith paid in in cash," is held to have been substantially true when it appears that the amount was contributed by a delivery for that purpose by the special partner to the general partner of a certified check, and even by the delivery of an uncertified check when it appears that his account in the bank upon which it was drawn was good for the amount, and that the check was paid upon presentation immediately after the formation of the partnership. On the other hand, it is held that the statement was not substantially true when it appears that the contribution was in the form of goods or credits, or anything else which is not in substance and effect a cash payment. The requirement of the statement in the affidavit that the amount of the special capital has been "actually and in good faith paid in" is designed to inform prospective creditors not only that the capital has been actually paid in cash, but also that it has not been paid collusively, and that there is no secret or illicit arrangement between the general partners and the special partners whereby it is in effect a fictitious payment, or one which will not practically inure to the use of the partnership. If the amount has been paid in cash, so that it becomes a part of the capital, for use as capital may ordinarily be used by a partnership, the requirement is satisfied. In this case the partnership actually received the contribution; and this would be none the less true if Webster had paid in the amount from money borrowed from Goslin and Ammon or from the old firm. It is wholly immaterial from what

source the special partner derives the money with which he makes his contribution. As was said in the case of Lawrence v. Merrifield, 42 N. Y. Super. Ct. 36, affirmed 73 N. Y. 590:

"No part of the statute regulates the means which may be used by the special partner to obtain the money he makes special capital. If they be fraudulent or unlawful, the remedy is not given by this statute, nor while the other demands of the statute are satisfied do these means injure the creditors or other persons."

In that case the special partner and the general partner had been copartners in a pre-existing firm, and the special partner had sold his interest in that firm to the general partner for cash, and paid in the cash as his contribution to the limited partnership, and the court held that this was a legitimate transaction. In Van Ingen v. Whitman, 62 N. Y. 513, the special partner was entitled to $30,000 as his interest in a firm of which he and one White were members, and, in contemplation of forming a limited partnership in which White was to be one of the general partners and he a special partner, authorized White to convert the assets of the old firm into cash, and pay the amount as his contribution as special partner, and it was sought to hold him liable as a general partner because the statement in the affidavit that the amount had been actually and in good faith paid in was false. The court held that the question was whether the interest had been turned into cash which went into the capital at the time the certificate was filed, and it is apparent from the opinion that if this question had been found in favor of Whitman the decision would have been in his favor. In Metropolitan National Bank v. Sirret, 97 N. Y. 320, it was held that while the special partner, being a member of a firm engaged in carrying on the same business intended to be conducted by the limited partnership, may not put in his stock in the old concern upon a valuation as his contribution to the capital of the new firm, if he has paid in his share in cash the new firm is not prohibited from purchasing in good faith the stock of the old firm, or from paying for it out of the capital so contributed, although it may happen that the special partner is entitled to receive the whole of the purchase money; and this is so although there was an expectation on the part of the special partner and the other members of the old firm at the time of the formation of the limited partnership that it should purchase with the money so contributed the stock of the old firm. The court expressed the opinion that if in an antecedent contract between the special partner and the other members of the old firm it had been made a condition of his contribution to capital that the new partnership should make the purchase of the old firm and pay for it out of the amount to be paid in by him, the payment could not be upheld as made in good faith, in cash, as the agreement would practically deprive the general partners of the control of the money by appropriating it in advance. From these decisions it appears that the circumstance that the special partner has derived the money which he has contributed to the partnership from one of the general partners is of no significance as tending to show that

his contribution was not paid in good faith. What difference can it make whether he has borrowed it or received it in payment of an obligation? In either case the effect upon the financial ability of the general partner is the same. Concededly the special partner can borrow the money for the purpose from any other person than the general partner. His financial ability is a matter of which the statute takes no notice. The learned trial judge, in some of his observations to the jury, expressed the opinion that to permit the special partner to make his contribution out of money borrowed from the general partners could not have been contemplated by the statute, because the transaction would leave the assets of the partnership just as they were before. By this he probably meant that if the general partners had not loaned the money they could have used it in the business of the partnership, and therefore the assets of the partnership would not be increased by the contribution of the special partner. But the statute does not require the amount of the capital contributed by the general partners to be stated in the certificate, and it thereby treats any information to the creditors respecting their financial responsibility as something which is not essential.

We think the trial judge erred in instructing the jury in substance that Webster had not paid in the capital in good faith if they found that he had borrowed it from the old firm or from Goslin and Ammon.

If the statute means that the contribution to be made by the special partner must be made from his own money, the statements in the certificate and affidavit were false; but if the statute only means that it must be actually paid in, so as to be in the control of the general partners free from all contingencies save those that arise from the nature of the business, then the statements were literally true. As was said in Smith v. Argyle, supra: "The amount contributed by the special partner is a vital element in determining the responsibility of the firm and in fixing its credit." But if it is of no consequence whether he borrows the money and thus becomes obligated to the lender in an equal amount, it cannot be of consequence whether his financial responsibility be large or small, and it must therefore be quite immaterial whether he be using his own money or money which in substance belongs to another.

The learned judge observed to the jury in response to a request for instructions in behalf of the defendant that the fact that Webster did not use his own money to make the contribution did not subject him to liability. He said: "He might have borrowed it from others than the firm. It might have been given to him. He might lawfully be the mere channel through which other persons furnished this money as special capital in his name." In this opinion we think he correctly stated the law of the case.

The question was not presented by the pleadings or upon the trial whether Webster was liable as a general partner because of the false statement that he was a special partner. Upon the facts proved upon the trial it is plain that this relation never existed be-

tween the general partners and himself. He never had any interest in the business of the limited partnership, and it was never contemplated that he should have any. His only connection with it was that of a masquerader. But we are unable to conclude that he did not actually pay in his contribution of special capital, or that the statement in the affidavit that he had paid it in good faith was not true.

The judgment is reversed, with instructions to the court below to order a new trial.