### In re RASMUSSEN et al.

### Petition of FIRTH.

(Circuit Court of Appeals, Second Circuit. January 5, 1923.)

### No. 100.

1. **Bankruptcy ⬅=⬎439—Order permitting amendment of proceedings other than adjudication is reviewable by petition to revise; "proceeding in bankruptcy."**

An order amending the petition in bankruptcy and proceedings other than the adjudication, by adding the name of another as general partner of the bankrupt firm, is a "proceeding in bankruptcy," reviewable, if at all, by petition to revise, under Bankruptcy Act, § 24b (Comp. St. § 9608).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bankruptcy Proceedings.]

2. **Bankruptcy ⬅=⬎440—Facts reviewed on petition to revise, to avoid necessity of subsequent appeal, resulting in reversal.**

Where the proper method of review of an order amending the petition in bankruptcy, by adding an additional name as a general partner of the bankrupt firm, was by petition to revise, on which the court's finding that the person affected did not act in good faith in making his contribution as a special partner was conclusive, though contrary to the evidence, so that no question of law was thereby presented, and the order would have to be affirmed, after which an adjudication would necessarily follow, which would be reversed on appeal, under Bankruptcy Act, § 25a (Comp. St. § 9609), because the facts could then be considered, the court will treat the petition to revise as an appeal, and thereby avoid the unnecessary time, labor, and expense of two reviews.

3. **Partnership ⬅=⬎371—It is immaterial to liability of special partner from what source he obtained funds contributed.**

It is immaterial from whom a special partner obtains the money he contributes to the firm, unless he obtains it with knowledge from general partnership funds of a then existing general partnership, so that an affidavit showing a contribution by a special partner, as required by Partnership Law N. Y. § 91, as re-enacted by Laws 1919, c. 408, was not false, so as to make the special partner a general partner, under section 94 of that law, where the evidence showed the special partner believed in good faith the money had been advanced by a third person, to whom he assigned his special partnership interest, though in fact the money was general partnership funds, which the firm had given to the third person for that purpose.

Petition to Revise and Appeal from Order of the District Court of the United States for the Southern District of New York.

<hr>

⬅=⬎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

In the matter of Joseph A. Rasmussen and Fred Hannsen, individually and as partners, bankrupts. On petition by John Firth to revise, and appeal from, an order permitting the amendment of the petition in bankruptcy by inserting the name of John Firth as a general partner. Order reversed.

Petition to revise and appeal from an order, inter alia, that a petition in bankruptcy be amended by the insertion of the name of John Firth as a general partner. On February 23, 1922, three creditors of Rasmussen and Hannsen, composing the firm of Rasmussen & Co., filed a petition in bankruptcy against the individuals and the firm, and adjudication was made and entered on April 10, 1922. On the same day these creditors, on allegations that John Firth was a general partner of Rasmussen & Co., moved that the petition in bankruptcy be amended by the insertion of Firth's name as one of the general partners; that the adjudication in bankruptcy be amended, "so as to include an adjudication of" Firth "as one of the members" of the firm; and that all other proceedings be amended accordingly. This motion was opposed by Firth. The District Court thereupon entered an order appointing a special master to hear the matter and report "whether or not Firth was, at the time of the filing of the petition in bankruptcy," a general partner of Rasmussen & Co. After a full hearing, the special master filed a comprehensive report on the facts and the law. The essential facts follow:

Prior to May 20, 1921, Rasmussen and Hannsen had been copartners in the stock brokerage business in New York City under the firm name of Rasmussen & Co. On May 20, 1921, the firm was dissolved and a new firm was formed with the same firm name. The copartnership agreement signed on that day named Rasmussen and Hannsen as general partners and John Firth as special partner. On May 23, 1921, a certificate and accompanying affidavit in accordance with section 91 of the Partnership Law of the state of New York (Laws 1919, c. 408), quoted in the margin,[1] were filed in the office of the New York county clerk.

Prior to May 20, 1921, Rasmussen had importuned Firth, with whom he was acquainted, and who was a man somewhat advanced in years and a manufacturer of wireless apparatus, to become a special partner in his firm and to make a contribution of $50,000 thereto. Firth declined, because, as he told Rasmussen, he did not have money for any outside ventures; all the money he had was needed in his business. A short time afterwards Rasmussen approached Firth again and told him that he could arrange so that Firth could become a special partner in the firm without putting up any of his own money; that a friend of his, Edward J. Ryan, who was a man of means, and who intended later to become interested in the business, but whose engagements prevented him from doing so at that time, would advance the $50,000 required for Firth's contribution to the special partnership, if Firth would execute an assignment of his interest in the sum so contributed to Ryan. Firth accepted Rasmussen's proposition, and was induced to do so by two considerations—first, a desire to please Rasmussen; and, second, by the fact that he expected to make a profit without any cost to him and needed only to lend his name.

Without Firth's knowledge, the scheme was carried through in the firm devised by Rasmussen. Rasmussen & Co. had an account with Harvey A. Willis & Co., brokers, showing a credit on May 20, 1921, of between $15,000 and $20,000. On that day Willis & Co. gave Rasmussen their check for $50,000 payable to his order, and the difference between the credit and the amount of such check was covered by post dated checks of Rasmussen & Co. The ar-

---

[1] "Sec. 91. *Affidavit to be Filed.* At the time of filing such original certificate, an affidavit of one or more of the general partners, stating that the sums specified in the certificate to have been contributed to the common stock by each of the special partners have been actually and in good faith paid in cash, shall also be filed in the same office, and a copy thereof, certified by the county clerk, filed in each office in which a copy of the original certificate is filed."

rangement was made as an accommodation to Rasmussen. Ramussen took the Willis check to the Seaboard National Bank, obtained a cashier's check for $50,000 to the order of Ryan, and deposited the same in the Bankers' Trust Company to the credit of Ryan. Ryan then drew a check on this account for $50,000 to the order of Firth, which check was certified. Then the certified check was delivered to Firth, who signed the limited partnership agreement and indorsed the $50,000 check over to the new firm of Rasmussen & Co., and it was deposited to the credit of such firm in the Bank of America.

Contemporaneously with the execution of the limited partnership contract, Firth executed an assignment to Ryan of his interest in the $50,000 contributed by him as special partner, and authorized Ryan to collect the same when due and payable. The instrument of assignment also provided that Ryan should make no claim for the repayment of the $50,000 from Firth or his legal representatives. Firth received two payments of $1,000 on account of his share of the profits of the special partnership.

Upon the facts supra, the special master concluded that Firth was a special and not a general partner. The District Judge, in his opinion, seems to have accepted the special master's report as to the facts, and particularly as to Firth having no knowledge that Ryan was acting as a dummy for Rasmussen & Co.; but he took a view of the law different from that of the special master and decided that "the motion to amend the petition for the purpose of bringing in John Firth and amending the adjudication so as to adjudge him a general partner should be granted."

The order, however, provided merely that the petition in bankruptcy be amended by the insertion of Firth's name as one of the general partners and all other proceedings "than the adjudication" be so amended, and that Firth be allowed to answer or demur to the petition so amended. The order also sustained all the exceptions to the special master's report filed by the moving creditors. The effect of the order in this regard was to hold as a fact, contrary to the report of the special master and the opinion of the District Judge (as we read it), that Firth had not acted in good faith, but had knowledge of all the facts as to the source of the $50,000. The record does not enlighten us as to whether or not the difference in this regard between the opinion and the order was inadvertent.

Stires & Barron, of New York City (Bernard S. Barron and Max Rockmore, both of New York City, of counsel), for appellant.

Hays, Hershfield & Wolf, of New York City (Ralph Wolf and Wolfang Schwabacher, both of New York City, of counsel), for appellees.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). [1] At the outset is presented a curious question of practice. The order did not amend the adjudication, but held that the petition and proceedings other than adjudication should be amended by adding Firth's name as a general partner. Such an order is a proceeding in bankruptcy, and reviewable, if at all, by petition to revise. Bankruptcy Act, § 24b (Comp. St. § 9608). As the court, by its order, found as a fact that Firth did not act in good faith, and had full knowledge of the dummy transaction, and as we cannot review the facts on petition to revise, no question of law would be presented.

[2] If, however, we were to dismiss the petition to revise, the order below would preclude Firth from contesting in the District Court the holding that he was a general partner. His resistance against adjudication would be confined to the question of insolvency, as the act of bankruptcy was plain, and apparently, also, he has no defense against insolvency of the firm. Thus there would be an adjudication from

which he would appeal (section 25a [Comp. St. § 9609]), and then we could examine the facts as well as the law.

We must therefore deal with the situation practically and escape the maze of technicality. It would, of course, involve unnecessary time, labor, and expense to have two reviews when one will do. We have concluded, therefore, to treat this as an appeal.

We agree with the conclusions of the special master as to the facts. The case was peculiarly of the kind where it is highly important to see and hear the witnesses in order to determine the credit which is to be given to testimony. The vital fact which the master found was that Firth had no knowledge of the plan by which Rasmussen carried out the scheme and that Firth acted throughout in complete good faith.

Section 94 of the New York Partnership Law (Consol. Laws, c. 39, re-enacted by Laws 1919, c. 408) provides:

"Sec. 94. *Effect of False Statements or Failure to Publish Terms.* If any false statement be made in any such certificate or affidavit, made either upon the formation or renewal or continuance or increase of capital of such partnership, or if any such certificate or notice is not so published, or if such partnership be renewed or continued in any other manner, the persons interested therein shall all be liable as general partners."

[3] The question, then, is whether the affidavit which was filed under section 91 of the Partnership Law contained a false statement. We may start with Webster v. Lanum, 137 Fed. 376, 70 C. C. A. 56, upon which authority the master relied. The District Judge was of opinion that the case at bar differed from Webster v. Lanum, supra, "in the vital fact that Firth did not borrow nor was he given $50,000 by the general partners, or by any third person." In this we think the District Judge erred. The cash was actually paid by Firth, and, so far as he was concerned, was paid in good faith. As a New York statute is involved, we look primarily to the decisions of the New York Court of Appeals, to ascertain whether that court has differed with this court in the construction of the statute here under consideration. It is unnecessary to review the many cases on the subject, because they have been considered either in Webster v. Lanum, supra, or in Crehan v. Megargel, 234 N. Y. 67, 136 N. E. 296, the latest case on the subject in the New York Court of Appeals. While reversing on some points, the court in the Crehan Case said:

"The object of that statute and its predecessors in enactment was to provide for a combination of capital and skill and to enable those who had the former to contribute it to a partnership without other liability than loss of their investment, so long as they complied with the statute and refrained from exercising the powers and privileges of general partners. The interest of a creditor like the plaintiff is that the special capital shall be honestly and fully contributed as provided by the statute, and he has no legal or direct interest in the identity of the special partner, so long as he contributes his capital and observes all of the requirements of the statute. White v. Eiseman, 134 N. Y. 101; Webster v. Lanum, 137 Fed. 376. We fail to see how he is interested in the fact that the special partner has borrowed the capital which he contributes or has received it under some other form of arrangement even less compelling upon him than a loan, so long as the arrangement does not result in a violation or evasion of the statute and of the requirement that the special capital shall be contributed and that the special partner shall not assume the status of a general partner."

It must be remembered that the statute does not require any affidavit or certificate from the special partner, and that it is fully satisfied if the statement is true that the contribution of the special partner has been actually and in good faith paid in cash. All the cases hold that it is immaterial from whom the special partner obtains the money which he contributes, unless, of course, he obtains it with knowledge from general partnership funds of a then existing general partnership. There is nothing in the statute which requires the special partner to follow the disposition of the cash contribution made by him. When, therefore, Firth handed over to the new firm of Rasmussen & Co. Ryan's certified check for $50,000, indorsed by Firth, his duty under the statute was ended. We are therefore of opinion that the District Court erred in refusing to sustain the special master's report, on the ground that there was a false statement under section 94 of the Partnership Law.

. Other questions covered by the special master's report and satisfactorily dealt with by him are not discussed in the opinion of the District Judge—presumably because, having disposed of the question referred to supra, he thought it was unnecessary to consider other questions.

We think the recommendations of the special master that the motion be denied should have been sustained in all respects.

Order reversed, with costs.