[Civ. No. 15348.   First Dist., Div. Two.   Apr. 17, 1953.]

HELEN HENNINGSEN, Respondent, v. MOE HOWARD et al., Defendants; ALEC BARNARD et al., Appellants.

Shapro & Rothschild for Appellants.

O. Vincent Bruno and Harold Unterberg for Respondent.

NOURSE, P. J.—This is an appeal from an order granting a new trial after judgment for defendants by the court sitting without a jury. The amended complaint contained four causes of action, to the following effect: The first that Moe Howard, Meyer Winkleman, David Barnard and Alec Barnard individually and as copartners doing business under the name of Barnard Brothers Textile Division in June, 1949, in New York City bought and received from plaintiff's assignor textiles on the price of which $7,787.84 remained due and owing; the second that plaintiff's assignor on September 21, 1949, in the Supreme Court of New York County recovered judgment against said Moe Howard, individually and as copartner and against said copartnership Barnard Brothers Textile Division in the amount of $8,548.74 of which $7,913.74 remained due and owing; the third is to the same effect as the first but with the addition of the allegations that on March 19, 1949, a certificate of limited partnership of Barnard Brothers Textile Division was executed, which was filed in the office of the county clerk of New York County on March 21, 1949, and thereafter published which provided that said David Barnard was a limited partner who would contribute $25,000 in cash, but that he had not contributed more than $15,000 and that the amount of $10,000 he owed to the partnership should be subjected to plaintiff's claim; the fourth that said David Barnard and Al Zeder in October, 1949, when the said partnership was insolvent, shipped assets of the said partnership of a value in excess of $8,000 to California for the purpose of defrauding creditors, disposed of these assets

and converted the proceeds, of which they became involuntary trustees. Only David Barnard and Alec Barnard were served in this action so that they were the only parties defendant. The court gave judgment for them finding among other things in substance that Alec Barnard was not a partner in Barnard Brothers Textile Division, that David Barnard was a limited partner in said partnership, that he had contributed in excess of $25,000 and was not liable for debts of the partnership and that neither of said two defendants had been served with summons in the New York action. Plaintiff moved for a new trial on the grounds of newly discovered evidence, with supporting affidavits, of insufficiency of the evidence to justify the decision and of errors of law occurring at the trial. The motion was granted "on the grounds among others of insufficiency of the evidence to justify the decision of the Court." Defendants appeal.

The main point in dispute on appeal is whether the new trial could correctly be granted on the ground of insufficiency of the evidence. Plaintiff-respondent did not point out any specific errors of law as having occurred at the trial and we did not find any. The affidavit in support of the motion for a new trial showed that the alleged newly discovered evidence related to the alleged existence of a concealed interest of Alfred D. Zeder in the limited partnership under the name of "Barnard Brothers Textile Division," said to be discovered on September 20, 1951, by the examination of a partnership contract dated March 14, 1949, which provided for said interest. However, at the trial in this case the witness Winkleman, concededly a general partner in said partnership, had testified to the fact that Al Zeder entered the partnership on March 14, 1949, and that said partnership was terminated by him on March 15. Counteraffidavits in behalf of defendants showed moreover that on March 17 a certificate of limited partnership under the name of "Barnard Brothers Textile Division" containing the interest of Zeder had been filed in the office of the county clerk of the county of New York and that on March 19, 1949, there had been filed in said office a certificate cancelling said prior certificate. ██ ██ Appellants therefore urged that the alleged newly discovered evidence could not justify a new trial because it was known and obtainable at the time of the trial and cumulative only (*Knox v. Benbo,* 218 Cal. 779, 780 [24 P.2d 761] ; *Parker* v. *Southern Pac. Co.,* 204 Cal. 609, 616 et seq. [269 P. 622] ; *Langdon* v. *Langdon,* 47 Cal.App.2d 28, 33 [117 P.2d 371] ; *Sitkei* v.

*Frimel,* 85 Cal.App.2d 335, 338 [192 P.2d 820]) and moreover because no showing whatever of diligence was made wherefore the affidavits were insufficient to support an order for a new trial on the ground of newly discovered evidence. (*Edwards* v. *Floyd,* 96 Cal.App.2d 361 [215 P.2d 117]; *Slemons* v. *Paterson,* 14 Cal.2d 612, 615-616 [96 P.2d 125].) Respondent's brief does not contain anything with respect to these points. Although generally the granting of a motion for a new trial on the ground of newly discovered evidence is a matter within the discretion of the trial court, we must under the above circumstances and authorities hold that there was no legal basis for the granting of a new trial on that ground.

We come now to the main question, whether a new trial could be granted on the ground of insufficiency of the evidence, the only ground on which respondent defends the order. Here again it is the rule that the matter is largely in the discretion of the trial court, that it is its exclusive province to weigh the evidence and to draw inferences from it. If, however, as a matter of law there is no substantial evidence to support a judgment in favor of the moving party, an order granting a new trial must be reversed on appeal. (*Brooks* v. *Metropolitan Life Ins. Co.,* 27 Cal.2d 305, 307 [13 P.2d 689]; *Pirrone* v. *Nuccio,* 78 Cal.App.2d 864, 868-869 [179 P.2d 18].) Appellants urge among other things that there is no substantial evidence on which either of the two defendants could be held liable to plaintiff on any of the counts. As to the fourth cause of action, although there was evidence that goods were shipped to Al Zeder in California, there was none that David Barnard had any connection with said shipments or the disposition of the goods or received in any manner any of their proceeds. Respondent did not dispute this on appeal, and it is indisputable. The facts on which the parties base their arguments as to the liability or absence of liability of the two defendants for obligations of Barnard Brothers Textile Division with relation to the first three causes of action are mostly undisputed although in some particulars not very clear.

For many years David and Alec Barnard had been in the office equipment business in San Jose as a partnership under the name of Barnard Brothers in which both equally were general partners. They also transacted many other kinds of business as partners. Moreover they had a general understanding that if David would transact any other busi-

ness in his own name Alec would get 50 per cent of the profit David made and contribute 50 per cent in the loss David might suffer. In the beginning of 1948 a large purchase of government surplus merchandise was concluded in New York under the name of Barnard Brothers, but with them some other persons, among whom Meyer Winkleman, were internally interested in said transaction as joint venturers. The San Jose firm transferred $35,000 to New York originally for said surplus venture. Alec remained in San Jose; David went to New York City and there opened an office for Barnard Brothers at 67 Wall Street. As an offshoot of the surplus business Barnard Brothers on Winkleman's initiative also entered the textile business at the same address. It is not quite clear who before March 19, 1949, participated in that business or whether it was transacted under the name of Barnard Brothers or Barnard Brothers Textile Division. The certificate of limited partnership dated March 19, 1949, and filed March 21, 1949 (Plaintiff's Exh. 1), recites that since October 14, 1948, Winkleman and Howard were interested with David Barnard in the textile business "under the firm name of Barnard Brothers at 67 Wall Street, Manhattan, New York City," and that they wished to continue that business in a limited partnership, but there is also testimony that the textile business started earlier than October 14th, that the name since October was Barnard Brothers Textile Division and that Howard was not interested in it but only worked on commission. Moreover the recital disregards the short-lived partnership in which Al Zeder was a partner. At any rate there is no evidence that Alec Barnard personally had any contact with said textile business.

The certificate mentioned Winkleman and Howard both residing in New York City as general partners and David Barnard residing at San Jose, California, as limited partner. It was provided that the latter "shall contribute to the capital of this partnership the sum of twenty-five thousand ($25,000) Dollars in cash." Both David Barnard and Winkleman testified that around March 19 the contribution of David Barnard as limited partner was paid in by transfer of an account in the National City Bank in the name of Barnard Brothers to Barnard Brothers Textile Division by means of a check or otherwise. Both testified that they believed the amount transferred in that way was probably about $35,000 and David Barnard moreover testified that all the money in said account in the name of Barnard Brothers was his. Winkleman further

testified that David Barnard withdrew a total of $2,200 from Barnard Brothers Textile Division for profit items and Alec Barnard testified that he received small checks in said aggregate amount and that theoretically he got half of it. Both Alec and David denied that Alec was a partner in the limited partnership, although he would participate in David's profit or loss; Winkleman, when as a witness he enumerated the participants with himself in the limited partnership, did not mention Alec.

Although in June, 1949, when Barnard Brothers Textile Division allegedly purchased textiles from plaintiff's assignor the above certificate of limited partnership had been filed and published in New York and although the judgment which said assignor obtained by default after substituted service on Moe Howard mentions as debtors over and above said Moe Howard only Meyer Winkleman and David Barnard (both not summoned), individually and as partners d/b/a Barnard Brothers Textile Division, respondent contends that the granting of the new trial was justified because under the above facts David and Alec Barnard were both liable as general partners. She urges that Alec Barnard concededly was to share in profit or loss of Barnard Brothers Textile Division. That such under New York law (which since 1922 has accepted the uniform partnership and limited partnership laws) is prima facie evidence that he was a partner but for exceptions not here applicable, that said prima facie evidence was not rebutted, and that as his name did not appear as a limited partner in the certificate filed he was not entitled to the benefits of such limitation. With respect to David Barnard she contends that he was not released from liability as a general partner because the certificate filed did not satisfactorily represent the actual facts in that Alec Barnard was not mentioned as a partner, and David had not contributed in cash the $25,000 to be furnished, as the actual contribution of $35,000 had been for 50 per cent by Alec Barnard as an undisclosed partner, and because the whole contribution had been made by check instead of in cash. New York cases dating from before the adoption of the uniform partnership legislation in that state are cited in support of the contention that each of these defects causes David to be personally liable. Appellants take the position that the above evidence shows as a matter of law that Alec Barnard was not a partner, but a subpartner in David's interest, which subpartnership does not make him liable for partnership

obligation under New York law (*Burnett* v. *Snyder*, 81 N.Y. 550, 555 [37 Am.Rep. 527] ; *Silberfeld* v. *Swiss Bank Corp.*, 99 N.Y.S.2d 888, which latter case is also cited by respondent on the same matter), that the certificate filed substantially complied with all statutory requirements, that the source from which David received the money he contributed is immaterial, and that under the present law contribution by means of a good check instead of cash does not cause liability.

Although the testimony at the trial seems to indicate that Alec's position probably was that of a subpartner in David's interest we cannot say as a matter of law that from all the evidence the inference could not be drawn that David when he became a limited partner in Barnard Brothers Textile Division was, without disclosing it, doing so as representing his partnership with his brother or was acting in part as agent for his brother as an undisclosed principal. Such inference could possibly be based on the fact that the San Jose partnership indirectly contributed capital to the limited partnership through the transfer of the bank account by David Barnard and that the checks representing profit element from the limited partnership seem to have been transferred to the San Jose partnership account. However, we do not think that even if this inference were drawn it would follow under the uniform partnership and limited partnership laws that such would cause liability of defendants as general partners, although this might well have been the result under the previous law.

The leading cases on this subject are *Giles* v. *Vette*, 263 U.S. 553 [44 S.Ct. 157, 68 L.Ed. 441] and *In re Marcuse & Co.*, 281 F. 928, affirmed in the Giles case. Marcuse and Morris as general partners and Hecht and Finn as limited partners but such as trustees for themselves and five other contributors intended to form a limited partnership for the conduct of a brokerage business; although contracts were signed, a certificate filed, the contributions paid in and business begun, the attempt to form a limited partnership miscarried because the Uniform Limited Partnership Act, as it had meanwhile been adopted in Illinois did not permit such formation for brokerage purposes and because formalities in accordance with the new statute had not been complied with. When the firm became insolvent the lower court held that with Marcuse and Morris all seven other persons interested were subject to bankruptcy proceedings. The circuit court, however, held that neither Hecht and Finn nor the persons for whom they were

trustees were liable as general partners or subject to bankruptcy proceedings and the Supreme Court affirmed.

The opinions on appeal and certiorari explain the difference between the old and the new law: Under the old law whoever shared the profits of a business was held liable as a general partner except insofar as he could invoke the benefit of a limitation of liability on the basis of strict compliance with statutory provisions as to limited partnerships. Any falsity in certificate or other defect made all liable as general partners. Under this law the limited partnership became a trap instead of a safe means to provide capital to a business without general liability. The uniform partnership and limited partnership laws were intended to remedy this defect and make the position of the intended limited partner more safe. Under said uniform law one is except for estoppel not a partner as to third persons unless he is a partner with respect to his coparticipants (U.P.A. § 7(1)) and only those are such partners who carry on the business as coowners for profit (U.P.A. § 6). The receipt by a person of a share of the profits of a business is only prima facie evidence that he is a partner (U.P.A. § 7(4)) and this prima facie evidence can be rebutted by evidence that he is not a partner under the preceding rule. The strict construction of the statute as in abrogation of the common law is expressly excluded (U.P.A. § 4(1); U.L.P.A. § 28(1)). Substantial compliance in good faith with the statutory requirements is sufficient for the formation of a limited partnership (U.L.P.A. § 2(2)). A limited partner becomes liable as a general partner if he takes part in the control of the business (U.L.P.A. § 7); anyone who is knowingly a party to a certificate containing a false statement is liable to one who suffers loss by reliance on such statement. (U.L.P.A. § 6.) Moreover a person who has contributed to a business in the erroneous belief that he thereby became a limited partner, can prevent liability as a general partner by promptly renouncing his interest in the profits of the business (U.L.P.A. § 11).

Both the circuit court and the Supreme Court held in substance that Hecht and Finn were not liable as general partners because they did not intend to become general partners and their actual position was not that of general partners as defined in the U.P.A.; they had no authority to act for the partnership and did not carry on the business of the firm, nor did their interest make them real coowners. Neither did they represent themselves as partners so as to make them

partners by estoppel. Even if the certificate were false in that it did not disclose the names of all the limited partners or the amount of the contribution of each, that would not cause them to be liable because no one had suffered loss in reliance on the false statement. If the promised contribution to the capital was fully made it did not make material difference whether it was contributed by two or more persons. The nonliability is further justified on the basis of section 11, U.L.P.A., the required renunciation having been made, but the opinions do not consider section 11 as the only remedy of the putative limited partners, and show the nonliability also independent from that section. (See to the same effect Crane on Partnership, § 32 and the same author in 31 West Virginia Law Quarterly, 1, 8.) If the indirect contributors should be considered as having become contributors to the business by being represented by Hecht and Finn their liability cannot be wider than the liability of Hecht and Finn themselves.

Although the facts of the case before us differ from those of the above federal case, application of the reasonings there used will lead to the same result. There can be no doubt that David Barnard did not intend any more than Hecht and Finn to become a general partner, that the evidence shows that his actual position in relation to his associates was, like Hecht's and Finn's, not that of a general partner, and that like them he did not represent himself as a general partner but only as a limited partner. As a limited partner under the uniform act is in no sense a partner (see commissioner's note to § 1, U.L.P.A. (8 U.L.A. 2, 4)) this evidence rebuts the prima facie evidence of partnership from the sharing in profits. Again if there were any falsity in the certificate there is no evidence nor even any contention that anybody suffered loss in relying on it. There is no contention that the limited partnership did not receive all of $25,000 promised to be contributed, no contention that the account of Barnard Brothers transferred did not contain at least that amount or that the check was not cashed. There was even no evidence that the check was not cashed or the account transferred to the name of the limited partnership before March 21st, the date of filing of the certificate. Under these circumstances it is very doubtful whether even under the old New York law the contribution by check instead of cash could have led to general liability (*White* v. *Eiseman,* 134 N.Y. 101 [31 N.E. 276]), but under the U.L.P.A. the absence of any loss in

reliance on the allegedly false statement certainly excludes the imposition of general liability for that reason. As in the Marcuse case it does not make any difference for creditors whether the amount was paid in by one or more persons. The contention of respondent that David was under duty to contribute $25,000 of his own money is not based on any authority and was false even under the strict old New York law (*Webster* v. *Lanum,* 137 F. 376 [70 C.C.A. 56]; *In re Rasmussen,* 287 F. 860).

As to Alec Barnard, if he was a subpartner sharing profits and losses of David, without himself having a direct connection with Barnard Brothers Textile Division, he was no partner and not liable for partnership liabilities even under the old law (*Burnett* v. *Snyder,* 76 N.Y. 344; 81 N.Y. 550 [37 Am.Rep. 527]; *Rockafellow* v. *Miller,* 107 N.Y. 507 [14 N.E. 433].) If he is considered to be directly entitled to profit from the partnership because David in part represented him as an undisclosed principal or represented the partnership then the prima facie evidence that he was a partner was rebutted at least as strongly as it was in the case of David. He had no intention to be a partner, his position in relation to the partners of Barnard Brothers Textile Division could obviously at most be the same as the one of David, he did not in any respect carry on the business of the limited partnership; he did not hold himself out as a partner or even a limited partner and nobody relied on his being so. Under the Uniform Partnership Act he was not a partner and there is no basis to hold him liable as such.

We conclude that as a matter of law neither Alec nor David Barnard could be held liable for the liabilities of the limited partnership. As said in the Giles case, *supra,* at page 561: "To hold them liable as general partners would give creditors what they are not entitled to have, and would impose [on defendants] burdens that are not theirs to bear." It follows that the order granting a new trial must be reversed.

Order reversed.

Goodell, J., and Dooling, J., concurred.