[Civ. No. 24465. First Dist., Div. Three. Sept. 20, 1968.]

TIBURON NATIONAL BANK, Plaintiff and Respondent, v. WARREN O. WAGNER, Defendant and Appellant.

Gabler, High & Clark and Jack B. Clark for Defendant and Appellant.

Bagshaw, Martinelli, Weissich & Jordan and W. O. Weissich for Plaintiff and Respondent.

BROWN (H. C.), J.—This is an appeal from a judgment against defendant Warren O. Wagner and in favor of the plaintiff Tiburon National Bank on a promissory note executed by Mooney Yacht Company, a co-partnership. Appellant, Warren O. Wagner, claims that there was no evidence to support the court's finding and conclusion that he was liable on the note as a "general partner" of Mooney Yacht Company.

Also joined as defendants in the action were J. A. Maillian, Jr. (who was not served with process), and Lyle H. Turner (who defaulted). Neither testified at the trial.

The Facts: A. E. Mooney, J. A. Maillian, Jr., and Lyle H. Turner (a lawyer) intended to go into the business of buying and selling yachts in Marin County. They required financing. Sometime in late September or early October of 1963, Maillian went to Pasadena and called on Warren O. Wagner, with whom he had had prior financial transactions, in order to induce him to assist in the financing in exchange for an interest in the venture. At this meeting Maillian informed Wagner that a yacht had been purchased on the East Coast; that "they" (presumably Maillian, Turner and Mooney) desired to bring it to the San Francisco Bay area for resale, but that Wagner's credit backing was needed.

Maillian returned to Marin County and he and Turner prepared a letter dated October 4, 1963. It may be inferred that this letter expressed the agreement reached by Maillian and Wagner at this meeting in Pasadena. The letter is as follows: "Dear Mr. Wagner: This letter will serve to confirm that you and the undersigned are to become limited partners with Addison E. Mooney as general partner under a limited co-partnership to be formed for the purpose of engaging in the purchase and sale of pleasure craft, as owners, vendors, and subsequently as yacht brokers.

"Said business shall be known by a trade name to be subsequently selected and shall be financed by a loan of $25,000 by a lending institution in the San Francisco Bay Area.

"$5,000 of the proceeds of the said loan shall be by the partnership lent to you, the terms of repayment to be due and payable out of the profits of the business. Said $5,000 shall be disbursed one-third to you and one-third to each of the undersigned.

"You and Mrs. Wagner are to guarantee the loan to the bank and we confirm that each of the undersigned hereby guarantee to you the payment of one-third of any amounts that you may have to pay by reason of your continuing guarantee to said lending institution, less any recovery from the general partner.

"It is agreed that your interest as a limited partner shall be eight and one-third percent ($8\frac{1}{3}\%$) until such time as the said loan is repaid, or three (3) years, whichever shall be longer. After the repayment of said loan, the interest of yourself and each of the undersigned shall be reduced to five percent (5%) each.

"You and the undersigned will execute as limited partners a Limited Partnership Agreement with Addison E. Mooney, incorporating the foregoing provisions to the extent that the same will be appropriate in standard articles of limited co-partnership.

"If the foregoing correctly sets forth our agreement, kindly so acknowledge by signing below. Very truly yours, /s/ Lyle H. Turner Lyle H. Turner /s/ J. A. Maillian, Jr. J. A. Maillian, Jr."

This letter was not mailed. It was personally delivered by Maillian to Wagner on October 10, 1963.

Meanwhile, on October 7, 1963, Maillian, in the company of Turner and Mooney, called at the Tiburon National Bank

(hereinafter referred to as Bank) for the purpose of obtaining a loan for the partnership in the sum of $25,000.

In support of this application for the loan they presented the Bank with (1) a certificate of limited partnership with Mooney as a general partner and Wagner, Turner and Maillian as limited partners; (2) a statement of Wagner's finances disclosing his net worth to be in excess of $400,000; and (3) a continuing guaranty purporting to bear Wagner's signature and guaranteeing the loan if granted. The Bank granted the loan in the sum of $25,000 to the partnership. The promissory note evidencing the loan was otherwise unsecured and was executed by *"Mooney Yacht Company, a partnership By A. E. Mooney general partner(s) By J. A. Maillian, Jr. limited partner(s)."* (Italics added.)

It was established at trial that the signature of Wagner to both the continuing guaranty and the certificate of limited partnership had been forged. The certificate of limited partnership was never filed or recorded pursuant to the provisions of section 15502 of the Corporations Code. The financial statement had been given to Maillian by Wagner and contained a true statement of the net worth of Wagner, but Wagner testified that he did not permit the financial statement to get into Maillian's hands for the purpose of obtaining the loan. The record is silent as to his reason for giving it to Maillian.

Mooney, who was the working member of the partnership, had no knowledge that Wagner's signatures on the continuing guaranty and the certificate of limited partnership were forged. He was also of the belief that each member was a general partner in the venture.

Two days after obtaining the loan from the Bank, on October 10, 1963, Maillian again called upon Wagner at Pasadena and presented him with the letter dated October 4, 1963, heretofore set out in full. Wagner indicated his approval of the contents of the letter by affixing his signature on it in the following manner: "APPROVED AND ACCEPTED this *10th* day of October, 1963. /s/ Warren O. Wagner . . ." (Italics added.)

During this meeting Maillian handed Wagner a check signed by Turner on Turner's law office account in the amount of $1,667.67. This was the exact amount which Wagner was to receive under the agreement evidenced by the letter of October 4. Wagner endorsed and cashed the check. Prior to Maillian's visit to Wagner, Mooney had been induced to sign two blank partnership checks. One of them was made out to Wagner for $5,000. Wagner's endorsement was placed thereon by

Turner. Turner's check to Wagner for $1,667.67 represented one-third of the $5,000 so obtained. Maillian and Turner were each entitled also to $1,667.67 pursuant to the October 4 letter, making the total of $5,000.

The partnership paid the purchase price for the yacht in the sum of $14,500 plus $2,501.94 for the expense of shipping it to the San Francisco Bay area. The total expenses of the partnership came to $24,878. This included the $5,000 withdrawn by Turner of which $1,667.67 had been paid to Wagner.

The installments on the $25,000 note to the Bank became delinquent and on January 17, 1964, Mooney wrote the following letter to Wagner: ''Dear Mr. Wagner: Kindly be informed that for the past several weeks I have been requesting Mr. J. Mallian [*sic*] and Mr. Lyle H. Turner to contact you with respect to collecting the five thousand dollars you borrowed from the Mooney Yacht Company. I have not heard from either Jay or Lyle on this matter and thereby believe you, as a partner in this company, should be aware of the situation.

''As you know, we borrowed a non secured sum of twenty five thousand dollars from the Tiburon National Bank, Tiburon Calif. Such loan was received in the name of the Mooney Yacht Company, a partnership, with you as the guarantor.

''We purchased a 50' Chris Craft cruiser from the Rodi Boat Company of Ft. Lauderdale, Florida, and boat was shipped, via rail, to San Rafael, Calif. When this boat was purchased I informed both Jay and Lyle that our first transaction would run around $22,000 before putting her on the market for resale.

''Due to your loan our account with the bank was not sufficient to handle the bills and I have had to make up the balance from my own. We owe the bank for the past two months interest and a number of accounts which, I'm sure you will agree, is no way to run a business.

''I would very much appreciate hearing from you on this matter. Kindest regards, A. E. Mooney''

On February 10. Mooney again wrote Wagner. He received no reply to the two letters. Upon receiving the letters, Wagner forwarded them to Maillian.

Default having been made on payments on the note, the Bank instituted these proceedings for the balance due against Mooney, Wagner, Maillian and Turner as ''general partners,''

By the time of trial Mooney had sold the yacht for $20,500 and had repaid the Bank $17,587.37. There was a balance due the Bank in the principal sum of $7,413.63 and interest of $1,389.01.

The court rendered judgment against Wagner, Mooney, Maillian and Turner on the basis that each was a "general partner" and liable for the balance due with interest and attorney's fees. Only Wagner appeals.

 It is clear that Wagner could not be held liable to the Bank on the guarantee because the undisputed evidence showed that Wagner's signature thereon was forged. Likewise, Wagner could not be held liable as one who formally agreed to become a general partner because the agreement which he signed on October 10, 1963 provided that he would be a limited partner. Since limited partners are not liable for the debts of the partnership (see Corp. Code, § 15501), the question presented is: Did Wagner become liable as a "general partner" to the Bank as a creditor of the partnership, by reason of Wagner's participation in the venture and his failure either to comply with the recordation requirements of section 15502 of the Corporations Code relating to limited partnership or to renounce his interest in the partnership as provided by section 15511 of the Corporations Code?

Wagner, by approval and acceptance of the terms of the October 4, 1963 letter, agreed to become a limited partner in the venture. It may be inferred that an understanding had been reached between Wagner and Maillian at the first meeting in late September or early October 1963. In the October 4 letter the following language referring to a prior understanding is used, i.e., *"This letter will serve to confirm . . ."* (italics added) and which then sets forth in detail the agreement and refers to a prior understanding. The letter had been prepared October 4, which was prior to procuring the Bank loan and prior to Maillian's second visit to Wagner in Pasadena on October 10, 1963, the date Wagner signed his acceptance and approval of the arrangement.

Pursuant to the third paragraph of the October 4 letter, Wagner was paid his one-third of the $5,000 or $1,667.67. Although Wagner testified that he did not consider this payment a part of the transaction and that he believed it to be a part of some other transaction with Maillian, this other transaction was not explained and the court was well within its province in disbelieving Wagner's story. It is more reasonable to infer from his acceptance of the sum of $1,667.67 that he

was aware that some financing had been arranged by the partnership which would require his financial guaranty; that the partnership had commenced its business; and that he was to be a part of that business. This inference is fortified by Wagner's admission at the trial that Maillian had informed him that Maillian had signed Wagner's name to the continuing guaranty.

Wagner was further informed by letter dated January 17, 1964 from Mooney that the loan obtained by their partnership was delinquent and directed attention to the fact that he (Wagner) had signed the guaranty at the Bank; that the *yacht had not been sold* by the partnership, and it was necessary that Wagner communicate with him. At this time there was a possibility of a profit to the partnership on the sale of the yacht. Wagner did not reply to Mooney but forwarded the January 17, 1964 letter and a second letter from Mooney dated February 10, 1964 to Maillian.

While there is no indication in the record that Wagner authorized Maillian to sign his name to the continuing guaranty or certificate of limited partnership, it is significant that the transaction strictly conformed to the terms set forth in the October 4 letter. The trial court was justified in inferring that Wagner by accepting and retaining the $1,667.67 and failing to renounce his interest after being advised of the facts of the forged continuing guaranty by Maillian and by the January 17 letter from Mooney, intended to continue in the partnership. ▮ ''In reviewing the evidence . . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict [trial court] . . . When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its own deduction for those of the trial court.'' (*Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]; *Yakov* v. *Board of Medical Examiners,* 68 Cal.2d 67 [64 Cal.Rptr. 785, 435 P.2d 553].)

▮ Wagner argues that the Bank in making the loan to the Mooney Yacht Company did not rely on Wagner being a general partner. The Bank was given a copy of a certificate of limited partnership which specified that he was a limited partner. It is true that one of the purposes of requiring compliance with section 15502, subdivision (1) of the Corporations Code is to give notice of any limited interest of a partner to persons intending to extend credit to the partner-

ship. It is obvious that the Bank made the loan on the basis of Wagner's purported continuing guaranty and because of his financial statement, and not because they believed him to be a general partner. But the reason the Bank granted the loan is not important. It was a loan to the Mooney Yacht Company, a partnership. There is no indication in section 15044 of the Corporations Code or in any cited authority that a creditor must show actual reliance upon the non-recordation of the limited partnership certificate in order to recover on the basis of general partnership liability. The Bank had the right to rely upon there being substantial compliance with section 15502 of the Corporations Code before the protection of its provisions would be afforded to any member of the partnership. (See *Farnsworth* v. *Nevada-Cal Management,* 188 Cal. App.2d 382, 386 [10 Cal.Rptr. 531] ; *Siebold* v. *Berdine,* 61 Cal.App. 158, 162 [214 P. 655] ; *Russell* v. *Warner,* 96 Cal. App.2d 986, 988 [217 P.2d 43] ; *Refinite Sales Co.* v. *Fred R. Bright Co.,* 119 Cal.App.2d 56, 64 [258 P.2d 1116].)

It is true that Wagner did not intend to become a general partner. He could become a general partner only by his agreement or by operation of law. His letter of agreement of October 4, 1963 specified that he was to be a limited partner. But in order to limit his liability, compliance with the provisions relating to limited partnerships was necessary. ▮ Corporations Code section 15502, subdivision (1) provides for naming the general and limited partner, the amount of cash or property contributed by the respective partners, the duration of the partnership when invested, and it must designate the share of profits to which each limited partner is entitled and provides when the certificate must be filed and recorded. Substantial compliance in good faith with the provisions is all that that statute requires to eliminate general partnership liability. (Corp. Code, § 15502, subd. (1) ; *Henningsen* v. *Howard,* 117 Cal.App.2d 352 [255 P.2d 837] ; 3 Witkin, Summary of Cal. Law (1960) Partnership, § 38, p. 2295.)

▮ The evidence in the present case establishes that there was no ''substantial compliance,'' in fact, no compliance at all with Corporations Code section 15502. No certificate was ever filed or recorded. (Corp. Code, § 15502; see also *J. C. Wattenbarger & Sons* v. *Sanders,* 191 Cal.App.2d 857, 863-864 [13 Cal.Rptr. 92] ; Comments, *The Limited Partnership,* 2 U.C.L.A. L.Rev., pp. 105, 109.) ▮ A duty is imposed upon limited partners to make sure that the limited partnership has been properly formed, and sanction for failure to perform this duty is liability as a general partner.

Failure to record is not substantial compliance within the meaning of this rule. (*Russell* v. *Warner, supra,* 96 Cal.App.2d 986; *Vidricksen* v. *Grover,* 363 F.2d 372.)

Section 15044 of the Corporations Code provides: "Every partnership that is not formed in accordance with the law concerning special, limited, or mining partnerships, and every special or limited partnership, so far only as those partners who are not special partners are concerned, is a general partnership. *Every partner who is not a special or limited partner nor a member of a mining partnership is a general partner.*" (Italics added.)

When Wagner was informed by the letter from Mooney on January 17 that he was considered a partner and that the loan which had been procured at the Bank was delinquent, he could have at this time complied with the limited partnership requirements. The Uniform Partnership Act does not expressly provide a time limit within which a certificate has to be filed and recorded. In *Stowe* v. *Merrilees,* 6 Cal.App. 2d 217, 221 [44 P.2d 368], the court held that since no specific time was required by the act, the certificate should be filed within "a reasonable time."

Wagner also did not renounce his interest, limited or otherwise, in the partnership or in the potential profits when he received Mooney's letter of January 17, 1964, nor did he return the $1,667.67 which he received for his agreeing to become a partner.

Corporations Code section 15511 provides additional protection for one who acts meritoriously but in good faith believes that he is a limited partner. This section provides: "A person who has contributed to the capital of a business conducted by a person or partnership erroneously believing that he has become a limited partner in a limited partnership, is not, by reason of his exercise of the rights of a limited partner, a general partner with the person or in the partnership carrying on the business, or bound by the obligations of such person or partnership; provided, that on ascertaining the mistake he promptly renounces his interest in the profits of the business, or other compensation by way of income." (See *Henningsen* v. *Howard, supra,* 117 Cal.App.2d 352, 359; 3 Witkin, Summary of Cal. Law, Partnership (1960) § 38, p. 2295.) Assuming that section 15511 of the Corporations Code is applicable in other respects, it is clear that Wagner did not avail himself of the opportunity to come within its saving provisions by renouncing his interest.

It is therefore concluded that Wagner, by reason of his failure to comply with the statutory provisions relating to limited partners, became liable as a general partner. Furthermore, after full knowledge of the facts, he failed to avail himself of the provisions of Corporations Code section 15511. As a general partner he became individually liable for the debts of the partnership.

The judgment of the trial court is affirmed.

Draper, P. J., and Salsman, J., concurred.