B.G. METZGER *et al.*, Plaintiffs-Appellants, v. NEW CENTURY OIL AND GAS SUPPLY CORPORATION INCOME AND DEVELOPMENT PROGRAM—1982 *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—90—3544

Opinion filed May 19, 1992.—Rehearing denied June 2, 1992.

Metzger & Associates, Ltd., of Chicago (Donald L. Metzger, of counsel), for appellants.

Pope, Ballard, Shepard & Fowle, Ltd., of Chicago (Timothy C. Klenk, Catherine P. Wassberg, and Gregory W. Beihl, of counsel), for appellees.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiffs B.G. Metzger, Charles Strauss, and Arthur Edelstein (jointly, plaintiffs) brought suit against defendants New Century Oil and Gas Supply Corporation Income and Development Program—1982, New Century Oil and Gas Supply Corporation (jointly, the New Century defendants), Sherman Mazur, Gerald H. Weiner, Richard A. Wall, and Wells Fargo Bank (the Bank), seeking rescission of the sale of partnership units and damages stemming from that sale. The circuit court dismissed most of the counts in plaintiffs' third amended complaint and found no just reason for delaying enforcement or appeal pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

Plaintiffs appeal, raising as issues (1) whether the circuit court properly dismissed counts I through V of plaintiffs' third amended complaint on the basis that those counts failed to allege a cause of action; (2) whether the circuit court properly dismissed count VI of plaintiffs' third amended complaint on the basis that plaintiffs failed to allege fraudulent misrepresentation by the Bank; (3) whether the circuit court properly dismissed count VII of plaintiffs' third amended complaint on the basis that the sale giving rise to that count occurred more than three years prior to the filing of the claim; (4) whether the circuit court, in the alternative, properly dismissed counts II, III, and V of plaintiffs' third amended complaint on the basis that the sale giving rise to those counts occurred more than three years prior to the filing of the claims; (5) whether the circuit court, in the alternative, properly granted summary judgment to defendants on counts II, III, and VII of plaintiffs' third amended complaint on the basis that plaintiffs failed to provide notice of election to void the sale of securities within six months after acquiring knowledge of voidability; and (6) whether the circuit court properly denied plaintiffs' motion to vacate the orders of dismissal or to file a fourth amended complaint.

In September 1982, New Century Oil and Gas Supply Corporation Income and Development Program—1982 (the partnership), a California limited partnership, was organized to engage in the business of acquiring oil and gas properties to drill for, produce, save, and sell oil and gas, and to issue securities in the form of limited partnership interests called "units." Also in 1982, New Century Oil and Gas Supply Corporation (the corporation), the sole general partner of the partnership, was organized to acquire and develop oil and gas properties.

Sherman Mazur was the president and a director of the corporation; he, along with Gerald Weiner[1], the secretary and director of the corporation, was in control of the management and affairs of the corporation. Richard Wall[2] was a director and "chief executive officer" of the corporation.

Sometime in August 1982, Strauss, an Illinois certified public accountant, wrote to the Bank, which provided loans to the partnership secured through investors' letters of credit, stating that he and some of his clients were planning to invest in the New Century defendants' oil drilling programs. Strauss requested that the Bank provide him with information. The Bank responded to Strauss' inquiry with a let-

---

[1]The cause against Weiner was dismissed for lack of jurisdiction.

[2]Wall has not been served with summons for purposes of this litigation.

ter stating that it could not analyze the partnership's prospects for success and essentially was not in a position to comment on the investment. Thereafter, Strauss informed his clients, Metzger and Edelstein, of the investment opportunity and they requested further information from the New Century defendants.

Between September 2, 1982, and sometime in December 1982, the New Century defendants delivered to Strauss certain offering materials, including a prospectus, a subscription agreement, execution documents, and a limited partnership agreement.

In December 1982, all three plaintiffs purchased interests in the partnership; Metzger, Strauss, and Edelstein returned to Mazur signed copies of the subscription agreement and execution documents for the purchase of four, two, and eight partnership units, respectively, at $50,000 per unit. In addition, each plaintiff represented in the offering documents that he had a net worth over $1 million, and that he had knowledge and experience in the evaluation of risks and merits of investing in the partnership. According to the subscription agreements, plaintiffs' status as limited partners would commence on the date of the filing of the "Amended Certificate of Limited Partnership" designating them as limited partners.

In payment for the units, each plaintiff delivered a check payable to the partnership in the amount of 8% of the purchase price of his units; a promissory note payable to the partnership on March 10, 1983, and December 31, 1989; and a letter of credit in favor of the Bank for the remainder of the purchase price.

Subsequently, the Bank and the New Century defendants reviewed and approved plaintiffs' subscription agreements and execution documents, and plaintiffs became entitled to share in the profits and losses of the partnership. In March 1983, plaintiffs paid the notes due and in August 1984, the Bank drew on the letters of credit for nearly the full amount, which plaintiffs paid to the Bank. Also in March 1983, the Bank loaned money, secured by plaintiffs' letters of credit, to the partnership.

In January 1983, the New Century defendants, allegedly acting in concert with the Bank and its attorneys, prepared and sent a letter to plaintiffs, which made representations about the subscriptions, units, and the program, offering a "technical right to rescission" for one week. Plaintiffs elected not to cancel their subscriptions.

On August 30, 1983, the partnership filed an amendment to the certificate of limited partnership with the recorder's office in Los Angeles County, California, listing plaintiffs and other investors as limited partners and setting forth their addresses and the percentage

of the profits or losses in which each was entitled to share. Pursuant to the subscription agreement, the amended certificate was signed by the corporation.

On January 26, 1984, plaintiffs were notified by letter by another investor that they had been victims of fraud; according to the investor, the drilling for oil had never been accomplished and the investment money had been diverted for other purposes. The letter informed plaintiffs that they might have legal recourse if they acted expeditiously. This warning prompted plaintiffs to initiate an investigation; however, the New Century defendants allegedly refused access to their books and records.

In November 1984, Strauss arranged for a Los Angeles law firm to investigate the operations, activities, and finances of the partnership. In January 1985, Mazur and Weiner represented to plaintiffs in writing that they had made arrangements and had taken steps to begin production.

In February 1985, however, the Los Angeles law firm requested that the California Department of Corporations conduct an investigation of the partnership and seize its records. In addition, the law firm recommended to Strauss that he and Edelstein send a letter demanding a refund of their investment. On February 27 and 28, 1985, Strauss and Edelstein sent the New Century defendants letters notifying them of their desire to rescind their purchases and demanding a refund of their investment.

On February 5, 1985, Metzger sent to the corporation by registered mail a notice of election to void the purchase of his partnership units, pursuant to the Illinois Securities Law of 1953 (the Act) (Ill. Rev. Stat. 1981, ch. 121½, par. 137.1 et seq.); on April 30, 1985, he sent a similar notice to the Bank. Two years later, on July 28, 1987, Strauss and Edelstein sent both the New Century defendants and the Bank notice of their election to void their purchases of the partnership units pursuant to the Act.

On April 1, 1985, Metzger filed the original complaint against the New Century defendants. Metzger's complaint sought rescission of the partnership units' sale under sections 4G, 12, and 13 of the Act for failure to file a report of sale. (Ill. Rev. Stat. 1981, ch. 121½, pars. 137.4(G), 137.12, 137.13.) On May 17, 1985, Metzger filed a separate complaint against the Bank for rescission of the same sale, alleging that the Bank participated in the transaction as a statutory underwriter.

Thereafter, in July 1987, Metzger orally sought leave of the court to amend the complaint against the Bank to add his case against the

New Century defendants, to add rescission claims by Strauss and Edelstein against both the Bank and the New Century defendants, and to add fraud claims by all three plaintiffs against both the Bank and the New Century defendants. According to plaintiffs, the amendments did not occur in July 1987, "for procedural reasons."

Rather, on July 31, 1987, all three plaintiffs filed a separate, eight-count complaint for rescission and damages against all defendants, incorporating the rescission and fraud claims which Metzger had attempted to add to his complaint against the Bank.

On September 8, 1987, Metzger was given leave to amend his original April 1, 1985, complaint against the New Century defendants by adding Strauss and Edelstein as plaintiffs, the Bank as a defendant, and the eight counts contained in the July 31, 1987, complaint. Thereafter, plaintiffs' suit against all defendants, filed on July 31, 1987, and Metzger's suit against the Bank, filed May 17, 1985, were voluntarily dismissed, leaving only the amended original complaint pending.

This amended complaint contained 10 counts: counts I through III contained, respectively, each of the three plaintiffs' rescission claims against the New Century defendants brought pursuant to the Act (Ill. Rev. Stat. 1981, ch. 121½, par. 137.1 et seq.); counts IV through VI contained each of the plaintiffs' rescission claims against the Bank, also brought pursuant to the Act; counts VII and VIII contained plaintiffs' common law fraud damages claims against all defendants; count IX contained the fraud rescission claims, pursuant to the Act, of all plaintiffs against all defendants; and count X contained fraud claims by all plaintiffs against all defendants based upon the Federal Securities Act of 1933.[3]

In response to plaintiffs' amended complaint, the Bank filed a demand for a bill of particulars and the New Century defendants moved to dismiss Strauss' and Edelstein's claims for rescission as time barred. On September 1, 1988, the circuit court denied the New Century defendants' motion, holding that, although the "sale" of the securities had taken place no later than August 1983, when the amended certificate of limited partnership was filed, Edelstein's and Strauss' claims "related back" to April 1, 1985, the date on which Metzger filed his original complaint for rescission against the New Century defendants.

---

[3]Count X was dismissed on the basis that the 1933 statute does not permit private rights of action; it is not at issue in this appeal.

On April 7, 1989, the Bank filed a motion to dismiss counts V through IX, asserting that counts V, VI, and IX were time barred; that the fraud claims of counts VII and VIII failed to state a cause of action; and that count IX also failed to allege facts satisfying the technical requirements of section 13 of the Act.

Rather than respond to the Bank's motion, plaintiffs moved to amend their amended complaint. Plaintiffs thereafter withdrew their amended complaint and sought and were granted leave to file a second amended complaint.

On October 26, 1989, the circuit court granted plaintiffs' motion for leave to amend their second amended complaint and, on October 30, 1989, plaintiffs filed their third amended complaint.

Plaintiffs' third amended complaint contained seven counts. Counts I through IV were identical in form to the corresponding counts in the prior amended complaint. Thus, counts I, II, and III contained each plaintiff's rescission claim against the New Century defendants based upon the failure to register or report the sale of partnership units. Likewise, count IV contained Metzger's rescission claims against the Bank pursuant to the Act.

Count V incorporated both Strauss' and Edelstein's rescission claims, pursuant to the Act, against the Bank. That count alleged not that there had been a sale of the partnership units in December 1982, but that there had been only a "purported sale." Count VI asserted common law fraud claims by all plaintiffs against all defendants, and count VII contained fraud claims, pursuant to the Act, by all plaintiffs against all defendants.

Thereafter, the Bank moved to dismiss counts IV, V, VI, and VII of the complaint pursuant to section 2—615 of the Code of Civil Procedure (the Code) on the basis that those counts were insufficient at law, or alternatively, to dismiss counts V and VII as time barred. Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619.

For support, the Bank argued that, in counts IV and V, plaintiffs had eliminated their allegation that a "completed sale" to Strauss and Edelstein had occurred. Without a completed sale, the Bank contended, the reporting requirement of section 4G of the Act, the section upon which plaintiffs had based their rescission claims, would not apply. (Ill. Rev. Stat. 1987, ch. 121½, par. 137.4G.) Because section 4G had been amended, effective January 1, 1984, to preclude a right of rescission for failure to file a report of sale, the Bank maintained that plaintiffs' failure to plead a sale prior to that date was fatal to their rescission claims.

The Bank further argued that counts VI and VII failed to plead a cause of action because the allegations against the Bank in those counts consisted solely of disclaimers made by the Bank on which plaintiffs could not have reasonably relied. Lastly, the Bank contended that, in the alternative, counts V and VII were time barred because, if a sale had indeed taken place, it had occurred in December 1982 and, thus, the claims asserted under the Act in those counts were barred by the applicable three-year statute of limitations.

Similarly, the New Century defendants moved to dismiss counts I, II, III, and VII. In one motion, the New Century defendants argued that counts I, II, and III did not allege that a sale had taken place prior to January 1, 1984; thus the Act, under which plaintiffs based their claims, precluded a right of rescission for failure to file a report of sale. In the alternative, the New Century defendants contended that counts I, II, and III were time barred.

In another motion, the New Century defendants argued that count VII was time barred because the sale of the units occurred no later than August 1983. Thus, plaintiffs' claims, which the New Century defendants contended did not relate back to Metzger's original filing, were barred by the three-year statute of limitations.

Lastly, the New Century defendants moved for summary judgment on counts II, III, and VII on the basis that plaintiffs did not comply with the notice provisions of section 13B of the Act (Ill. Rev. Stat. 1989, ch. 121½, par. 137.13B).

On June 8, 1990, after hearing arguments, the circuit court granted the New Century defendants' motions to dismiss counts I, II, and III of plaintiffs' third amended complaint pursuant to section 2—615 of the Code. Further, the court dismissed count VII as time barred. The court also dismissed counts II and III on the alternative ground that they were time barred, and alternatively awarded the New Century defendants summary judgment on counts II and III, as well as on count VII.

The court also granted the Bank's motion to dismiss counts IV and V pursuant to section 2—615 of the Code. The court further granted the Bank's motion to strike certain allegations in count VI and dismissed that count pursuant to section 2—615 of the Code. Lastly, the court granted the Bank's motion to dismiss count VII as time barred. The court also granted the Bank's motion to dismiss count V on the alternative ground that it was time barred. The only count thus remaining was count VI, plaintiffs' fraud claim against the New Century defendants.

Thereafter, on July 9, 1989, plaintiffs moved to vacate the circuit court's order and requested leave to file a fourth amended complaint. Plaintiffs maintained that counts I through V of their third amended complaint were based not only on the reporting requirement of section 4, but also on the registration requirement of section 5 of the Act. Ill. Rev. Stat. 1987, ch. 121½, par. 137.5.

On September 28, 1990, after plaintiffs' motion to vacate was fully briefed and argued, and after all parties had addressed plaintiffs' theory of recovery under section 5 of the Act, the circuit court denied plaintiffs' motion.

On December 10, 1990, plaintiffs appealed from the court's dismissal of the several counts in the complaint and its denial of plaintiffs' motion to vacate the dismissal orders or to file a fourth amended complaint.

## I

Plaintiffs contend that the circuit court erred in dismissing counts I through V as legally insufficient for failure to allege a completed sale prior to January 1, 1984. Instead, plaintiffs maintain that those counts properly pleaded a sale of securities, in violation of section 12 of the Act, in December 1982.

In response, the Bank argues that plaintiffs are attempting to avoid statute of limitations problems by alleging that only "purported sales" of the securities took place prior to January 1, 1984. Consequently, the Bank argues that plaintiffs cannot allege both a "sale" in December 1982 for purposes of the Act's reporting requirements and no "completed sale" in December 1982 for statute of limitations purposes.

The standard of review is well defined and established: in ruling on the propriety of a dismissal on the pleadings, all well-pleaded facts in the complaint are assumed to be true. (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 552-53, 359 N.E.2d 113.) Further, the motion draws all fair inferences from the respondent's pleadings and contemplates that the moving party is entitled to judgment as a matter of law. (*Baker-Wendell, Inc. v. Edward M. Cohon & Associates, Ltd.* (1981), 100 Ill. App. 3d 924, 927, 427 N.E.2d 317.) A cause of action is thus properly dismissed on the pleadings where it clearly appears that no set of facts can be proved which will entitle the plaintiff to relief. *Greene v. First National Bank* (1987), 162 Ill. App. 3d 914, 918, 516 N.E.2d 311.

In the instant case, counts I through V of plaintiffs' third amended complaint sought rescission of the sale of partnership

units under section 12 of the Act for defendants' failure to register the securities or to file a report of sale with the Secretary of State. (Ill. Rev. Stat. 1981, ch. 121½, par. 137.12.) In count I, plaintiffs alleged that the New Century defendants sold partnership units to Metzger on December 15, 1982. Counts II and III alleged that the New Century defendants sold partnership units to Strauss and Edelstein "[o]n or about December 31, 1982." Count IV alleged that, with the Bank's knowledge and assistance, the New Century defendants sold partnership units to Metzger on December 15, 1982. Count V, however, did not allege a date on which a sale took place; instead, count V alleged that the Bank failed to comply with the Act after a "purported sale." Although plaintiffs provided no date on which the "purported sale" occurred, they did allege that they "signed and sent" subscription agreements and execution documents; that they sent payments by check for the units; and that they executed promissory notes payable to the partnership, all in December 1982.

Prior to January 1, 1984, section 4G of the Act provided that the seller of securities, if exempt from registering requirements because of the limited offering, must file a report of sale with the Secretary of State not later than 30 days after the sale. (Ill. Rev. Stat. 1981, ch. 121½, par. 137.4G.) Failure to file a report, according to section 12D of the Act, "shall be a violation of the provisions," allowing the purchaser to void the sale at his option. (See Ill. Rev. Stat. 1981, ch. 121½, pars. 137.12D, 137.13.) Consequently, prior to the 1983 amendments, a purchaser of securities could rescind a purchase based upon the issuer's failure to file the report required in section 4G. See, *e.g., Sanchez v. Walls* (1978), 59 Ill. App. 3d 75, 78-79, 375 N.E.2d 138.

The 1983 amendments, effective January 1, 1984, however, provided that, although the issuer was still required to file a report, the failure to file such a report no longer afforded an investor the right of rescission. (Ill. Rev. Stat. 1983, ch. 121½, par. 137.4G; *Schuler v. Beers* (1987), 157 Ill. App. 3d 97, 510 N.E.2d 48.) Thus, in order to escape the amendments' changes, plaintiffs had to allege that the sale of the securities occurred prior to January 1, 1984.

The problem confronting plaintiffs, therefore, was that if they alleged a sale prior to January 1, 1984, the statute of limitations in the Act, which prohibits actions brought more than three years after the "date of sale," would bar their claims. (See Ill. Rev. Stat. 1981, ch. 121½, par. 137.13D.) If they alleged a sale date after January 1, 1984, however, their rescission claims pursuant to sections

4G and 12 would fail. See Ill. Rev. Stat. 1983, ch. 121½, pars. 137.4G, 137.12.

To escape this conundrum, plaintiffs assert that the "date of sale" for section 13D limitations purposes is different from the determination of a "sale" under sections 5 and 4G. For support, plaintiffs rely upon *Silverman v. Chicago Ramada Inn, Inc.* (1965), 63 Ill. App. 2d 96, 211 N.E.2d 596, and *Herber v. Omega Oil Corp.* (N.D. Ill. Nov. 1, 1985), No. 85—C—384. In *Silverman*, the plaintiffs purchased an interest in the defendant corporation and paid for their purchase on four occasions in 1959; after the last payment in October 1959, the plaintiffs received stock and debentures evidencing their interests. Thereafter, the plaintiffs learned that the defendant had failed to register the securities as required by section 5 of the Act and brought suit in July 1962. The *Silverman* court held that "[t]he buyer has three years to exercise his right of rescission, not only from the date the right first accrues but from the date the sale is completed by the acquisition of legal title to the securities purchased." (*Silverman*, 63 Ill. App. 2d at 101-02.) Thus, the court found that each of the payments made by plaintiffs constituted a "sale" and the final payment in October, when the stock certificates and debentures were passed, completed the sale; the plaintiffs could have sued to recover after the first payment, the interim payments, or after the final payment. *Silverman*, 63 Ill. App. 2d at 102.

In *Herber*, the Federal district court found that, until all the sales of units in a particular well were sold, the defendant was not required to file a report under 4F of the Act. The court reasoned that until all the sales of units were completed, a defendant could not report the total amount of securities sold or the names of all the purchasers. *Herber*, No. 85—C—384, slip op. at 13.

In the instant case, plaintiffs thus argue that while a "completed sale" is necessary to trigger the statute of limitations, a completed sale is not necessary to trigger the reporting requirements of the Act. They contend that the "purported sale" in December 1982 was sufficient to initiate defendants' reporting requirement.

In response, the Bank maintains that the date of sale for both statute of limitations and reporting requirement purposes is the same date. For support, defendants rely upon *Thoms v. Private Ledger Financial Services, Inc.* (1987), 155 Ill. App. 3d 289, 507 N.E.2d 1327.

In *Thoms*, purchasers of limited partnership interests filed suit to rescind their purchases based upon the defendants' failure to file a section 4G report of sale within 30 days of the "date of sale," which the purchasers contended was December 28, 1983. On that date, the purchasers made a payment for the shares and also executed a note for the balance, payable in installments over the next three years. The court in *Thoms*, in interpreting the "date of sale" for purposes of section 4G, cited the *Silverman* opinion and held that "[f]inal payment for unregistered stock, transfer of the stock certificate, and passing of title completed the sale, fixed the rights of the parties, and constitutes a 'sale' within the Securities Law of 1953." *Thoms*, 155 Ill. App. 3d at 293.

■ Based upon the cases cited by both parties, we find that plaintiffs did indeed, in counts I through IV, allege a "sale" for purposes of section 4G of the Act and thus, stated a cause of action upon which relief could be granted. In counts I through IV, plaintiffs asserted that they had purchased the partnership units in December 1982. Moreover, plaintiffs alleged that they paid cash, like the *Thoms* purchasers, for the units in December 1982 and, also at that time, signed promissory notes and executed letters of credit, due at later times, as consideration for the units.

Notwithstanding the circuit court's finding that a completed sale was necessary to invoke section 4G reporting requirements, we find that the cited authority does not support the Bank's position. Neither *Thoms* nor *Silverman* stands for the proposition that a "completed sale" is essential for purposes of section 4G. Rather, both cases support plaintiffs' contention that the alleged "sale" in December 1982 constituted a sale for purposes of section 4G.

Count V, on the contrary, failed to allege any concrete date upon which a sale occurred and alleged only that a "purported sale" took place. Count V, however, did allege sufficient facts to demonstrate that a "sale" for purposes of 4G occurred in December 1982. Plaintiffs averred that they sent subscription agreements and execution documents for the purchase of the partnership units in December 1982. Moreover, plaintiffs alleged that, in December 1982, they each paid for the units by check, by promissory note, and by letter of credit. Accordingly, we find that such allegations supported plaintiffs' claim that a "sale" for purposes of section 4G had taken place in December 1982.

Plaintiffs also maintain that the court's dismissal was improper because they had alleged sufficient facts to state a claim for relief under section 5 of the Act, which provides that nonexempt securi-

ties must be registered by the issuer. (Ill. Rev. Stat. 1989, ch. 121½, par. 137.5.) The Bank contends, however, that plaintiffs failed to plead that the securities at issue were governed by section 5, in other words, not exempt due to section 3 or 4 of the Act. (See Ill. Rev. Stat. 1989, ch. 121½, pars. 137.3, 137.4.) Plaintiffs respond to the Bank's argument that it is not they who are required to plead the exemptions, but rather it is the Bank which is required to plead the exemptions as affirmative defenses.

Regardless of who is responsible for the pleading of the exemptions, we find that the court erred in dismissing counts I through V for failure to state a claim upon which relief could be granted. Because plaintiffs did allege sales in December 1982, albeit not specifically "completed" sales, we find that plaintiffs stated a claim upon which relief could be granted.

## II

Plaintiffs next contend, without citation to authority, that the circuit court erred in dismissing count VI (plaintiffs' common law fraud claims against both the Bank and the New Century defendants) for failure to allege the Bank's fraudulent misrepresentation. Specifically, plaintiffs contend that the court erred in striking certain of its allegations against the Bank or that, in the alternative, count VI stated a claim even after those allegations were stricken. In response, the Bank contends that the court properly struck certain allegations because those allegations were based solely on disclaimers made by the Bank upon which plaintiffs could not reasonably have relied.

■■ ■ The elements of the tort of fraudulent misrepresentation are (1) a false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) damages resulting from such reliance. (*Gerill Corp. v. Jack L. Hargrove Builders, Inc.* (1989), 128 Ill. 2d 179, 193, 538 N.E.2d 530.) A representation is "material" if it relates to a matter upon which a plaintiff would be expected to rely in determining whether to engage in the conduct in question; the test of materiality is thus whether a reasonable and prudent investor would attach importance to those facts in determining his choice of action. *Anvil Investment Ltd. Partnership v. Thornhill Condominiums, Ltd.* (1980), 85 Ill. App. 3d 1108, 1118, 407 N.E.2d 645; *Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 49, 390 N.E.2d 393.

■ In the instant case, we find that the "representations" which the court found to be immaterial (paragraphs 17a through 17g, 18k, 19a through 19e, and 20a through 20b of count VI), and thus struck, were disclaimers made by the Bank to plaintiffs. The Bank's disclaimers in essence stated that its relationship to the New Century defendants was only that of a lender; that it had not made an investigation into the venture and thus had no knowledge of the accuracy or completeness of the terms of the offering; and that it had not analyzed whether the venture would be successful.

Although the Bank's statements made it clear that it was not endorsing or recommending the purchase of the partnership interests, plaintiffs contend that the Bank's representations were actionable because, without those "negative representations," they would not have purchased the interests. Plaintiffs' argument is untenable; the Bank stated nothing about the partnership other than it had nothing to state. Accordingly, the court properly found that those "representations" were merely disclaimers and were thus not material and could not reasonably be relied upon by plaintiffs.

■ Plaintiffs, however, further argue that even without the stricken allegations and references thereto, count VI stated a claim of fraudulent concealment and conspiracy to defraud. In order to state a cause of action for fraud arising from concealment of a material fact, a complaint must plead, with specificity, particularity, and certainty, that the concealment was done with an intent to deceive under circumstances creating a duty to speak. (*Greene*, 162 Ill. App. 3d at 922.) Similarly, in order to state a cause of action for conspiracy to defraud, a complaint must set forth with particularity the facts and circumstances constituting the alleged conspiracy. *Heying v. Simonaitis* (1984), 126 Ill. App. 3d 157, 163, 466 N.E.2d 1137; see also *Bosak v. McDonough* (1989), 192 Ill. App. 3d 799, 549 N.E.2d 643.

■ Here, the remaining allegations of count VI against the Bank merely alleged in a conclusional fashion that the Bank and the New Century defendants entered into a conspiracy. Likewise, the remaining allegations do not aver that the Bank engaged in any affirmative acts or representations calculated to prevent correction of a misapprehension. (See *Crowell v. Bilandic* (1980), 81 Ill. 2d 422, 429, 411 N.E.2d 16.) Accordingly, the circuit court properly dismissed count VI as it relates to the Bank for failure to state a claim upon which relief could be granted.

## III

Plaintiffs next contend that the circuit court erred in dismissing count VII, brought pursuant to the Act by all plaintiffs against the Bank, on the basis that the action was not commenced within the period of the statute of limitations. The Bank, in response, maintains that plaintiffs' action is indeed time barred.

Metzger's original complaint against only the New Century defendants was filed on April 1, 1985; plaintiffs Strauss' and Edelstein's claims, in addition to all plaintiffs' claims against the Bank, were added on September 8, 1987. Thus, according to the Act, the date of sale initiating the statutory limitations period must have occurred prior to September 8, 1984, for plaintiffs' claims to be time barred. Ill. Rev. Stat. 1981, ch. 121½, par. 137.13D.

■ Section 13 of the Act provides that "[n]o action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after 3 years from the date of sale." (Ill. Rev. Stat. 1981, ch. 121½, par. 137.13D.) Thus, the fundamental dispute revolves around the date the limitations period began running. All parties agree that the limitations period started upon the "date of sale" of the securities; however, both plaintiffs and the Bank present conflicting views of the date of sale.

The Bank argues that the sale date is the date on which the sale and transfer of securities occurred, sometime in December 1982, or, at the latest, August 1983, when the amended certificate of limited partnership was filed. In contrast, plaintiffs contend that the securities sale was not completed until full payment was received on December 31, 1989. Until that final payment, maintain plaintiffs, their legal rights in the units were not unqualified and fixed, but could be divested by failure to pay the installment notes due in March 1983 and December 1989.

The circuit court in the instant case agreed with the Bank and found that the sale date occurred in December 1982, when the agreement was entered into, but not later than August 1983, when the certificate of limited partnership was filed. For support, the court relied upon *Silverman* (63 Ill. App. 2d 96, 211 N.E.2d 596), *Levine v. Unruh* (1968), 99 Ill. App. 2d 94, 240 N.E.2d 521, and *Frantzve v. Joseph* (1986), 150 Ill. App. 3d 850, 502 N.E.2d 396.

In *Silverman*, discussed previously, the court was confronted by a similar dispute. The *Silverman* plaintiffs purchased an interest in the defendants' hotel chain. The first payment was due in March 1959; the last payment was made on October 20, 1959, at which time the plain-

tiffs received the stock and debentures evidencing their interest. The plaintiffs filed suit in July 1962. Like the parties in the instant case, the parties in *Silverman* could not agree on the date the three-year statute of limitations period began running. The defendants alleged it was the date of the agreement and first payment; the plaintiffs insisted that the limitations period started when they made their final payment and received the securities in October 1959.

The *Silverman* court resolved the dispute by first examining the legislative intent behind enacting the Act—"to shield its citizens from unscrupulous stock promoters." (*Silverman*, 63 Ill. App. 2d at 99-100.) The court also noted the broad definition of "sale" contained in the law, finding "[i]ts obvious purpose *** to exclude nothing that could possibly be regarded as a sale." (*Silverman*, 63 Ill. App. 2d at 100-01.) From this analysis, the court ruled that all parts of a sales transaction, from agreement to purchase to title transfer, are actionable.

In *Levine*, the court readdressed the issue of when the limitations period begins to run against a plaintiff who brings a securities claim where the sale is entwined in a series of installment payments. In *Levine*, the plaintiff entered into an agreement with the defendant to purchase a part of an interest in an oil lease owned by the defendant. The agreement recited that the defendant would retroactively relinquish all of his rights to the oil lease sold to the plaintiff as of a date prior to the agreement date. In consideration thereof, the plaintiff made an initial purchase payment when he signed the agreement.

In rejecting the plaintiff's contention that the date of sale was the date of the final installment payment, the *Levine* court found that the statute of limitations began to run on the date the plaintiff executed the agreement and made the initial payment. The court emphasized that the plaintiff acquired an unqualified legal interest in the oil lease on the date of the agreement because the plaintiff was entitled to collect all royalties and profits on his portion of the lease after the agreement was entered into. (*Levine*, 99 Ill. App. 2d at 97.) Thus, the plaintiff did not need to make the final installment to be entitled to share in the profits. Accordingly, the court found that the sale date was the agreement date.

Similarly, in *Frantzve*, each of the plaintiffs purchased an interest and became a partner in a joint venture agreement for investment in real estate between August 1980 and March 1, 1982. The joint venture soured and financial losses were incurred. On May 17, 1985, the plaintiffs filed a two-count complaint, based upon fraudulent misrepresentation, seeking to rescind the agreement. The trial court found that the action was barred by the three-year statute of limitations. The appel-

late court affirmed, noting that the date a plaintiff acquires a legal interest in the alleged securities and the date when the rights of the parties to the transaction are fixed constitutes the "date of sale." (*Frantzve*, 150 Ill. App. 3d at 852.) The *Frantzve* court held that the plaintiffs received a direct and unqualified legal interest on or before March 1, 1982. (*Frantzve*, 150 Ill. App. 3d at 852-53.) Consequently, the action was time barred since the plaintiffs' complaint was filed after March 1, 1985.

Recently, the appellate court once more reviewed the definition of "date of sale" for purposes of determining the date upon which the limitations period is triggered for securities claims. In *Doll v. Bernard* (1991), 218 Ill. App. 3d 719, 578 N.E.2d 1053, the plaintiffs submitted subscription papers in November 1985 and contracted to buy limited partnership interests through a series of installment notes. In December 1985, the plaintiffs were approved and accepted as limited partners. On March 6, 1990, the plaintiffs filed suit to rescind their investments pursuant to the Act. On appeal, the court did not accept the plaintiffs' contention that their claims were not time barred because the defendants never made an absolute transfer of rights. Rather, the *Doll* court held that, as members of a limited partnership, the plaintiffs acquired a legal interest at the time they were entitled to share in the profits and losses of the partnership. *Doll*, 218 Ill. App. 3d at 723-24.

■ Although plaintiffs in the case at bar urge otherwise, we find that the circuit court was correct in holding that the "date of sale" occurred no later than August 1983. Each of the three plaintiffs, in December 1982, signed and returned a subscription agreement for the purchase of the units and received the securities evidencing their interests. Moreover, plaintiffs' purchase was approved and they became entitled to share in the profits and losses in December 1982. In March 1983, plaintiffs paid the notes due on March 10, 1983, and finally in August 1983, the amendment to the certificate of limited partnership was filed in California, designating each of the plaintiffs as limited partners having a specified percentage of profit or loss based upon the number of units purchased. Furthermore, despite plaintiffs' agreement to make subsequent payments on their promissory note, they, like the plaintiffs in *Levine* and *Doll*, received an unqualified interest in the securities.

Nevertheless, plaintiffs assert that their rights were never fixed or unqualified in August 1983 because the partnership was never formed in accordance with California law. Specifically, they contend that they could not have acquired any legal interest in the securities until the limited partnership was properly formed with them as limited partners.

Until such proper formation, they argue, the limited partnership interests for which they subscribed did not exist. Plaintiffs assert that the partnership was not formed because proper signatures were not provided on the amended certificate; the amended certificate failed to set forth the amount of cash contributed by each of the limited partners; and the percentage of profit and loss stated for each partner did not add up to a correct total.

"In California, in order to form a limited partnership, there must be a specific filing of Articles of Limited Partnership with the County Recorder." (*Mason v. Unkeless* (9th Cir. 1980), 618 F.2d 597, 599 n.3.) That filing must provide at least 15 designated items, including the names of the general and limited partners, the duration of the partnership, the share of profits to which each limited partner is entitled, and the amount of cash contributed by each of the limited partners. (*Tiburon National Bank v. Wagner* (1968), 265 Cal. App. 2d 868, 71 Cal. Rptr. 832.) The purpose of such a filing is to give notice to the public of the limited liability of the partnership. (*Brown v. Panish* (1979), 99 Cal. App. 3d 429, 160 Cal. Rptr. 282; *Tiburon National Bank*, 265 Cal. App. 2d 868, 71 Cal. Rptr. 832.) Although the requirements of the filing are detailed, substantial compliance with those requirements is all that is needed to eliminate general partnership liability. *Tiburon National Bank*, 265 Cal. App. 2d 868, 71 Cal. Rptr. 832; *J.C. Wattenbarger & Sons v. Sanders* (1961), 191 Cal. App. 2d 857, 13 Cal. Rptr. 92.

Notwithstanding plaintiffs' allegation in count I of their complaint that "Defendant Partnership is a limited partnership organized and existing under the laws of the State of California," they now argue that the partnership never existed due to the failure to comply with the filing requirements. We find, however, that the filing of the amended certificate of limited partnership in the Los Angeles County recorder's office, designating plaintiffs as limited partners and providing their respective percentage interest in the partnership, was in substantial compliance with California law. (See *Mason*, 618 F.2d at 599 n.3; *Wilson v. United States* (N.D. Cal. 1965), 246 F. Supp. 613; *Solomont v. Polk Development Co.* (1966), 245 Cal. App. 2d 488, 54 Cal. Rptr. 22.) The amended certificate of limited partnership filed by defendants provided the names, addresses, and signatures of the general partner and all the limited partners, in addition to setting forth the percentage interest in profits or losses. Accordingly, we find that defendants substantially complied with California law.

In order to defeat the statute of limitations, plaintiffs further argue that the statute of limitations should be tolled because defendants con-

cealed their books and records; accordingly, plaintiffs did not learn of the fraud until April 1987, at the earliest. The statute, however, did not provide for tolling until after the January 1, 1986, amendment, after which time section 13D provided that the action could be brought three years after the party bringing the action has knowledge of the violation, but no later than two years beyond the three-year period otherwise applicable. (Ill. Rev. Stat. 1985, ch. 121½, par. 137.13D.) Accordingly, this argument must fail.

Based upon the foregoing analysis, we find that the circuit court correctly dismissed plaintiffs' count VII against the Bank as barred by the three-year statute of limitations.

## IV

In a similar vein, plaintiffs aver that the circuit court erred in dismissing, in the alternative, counts II, III, and V on the basis that those counts were also time barred. For the same reasons as stated in part III, we find that the "date of sale" for purposes of the statute of limitations occurred no later than August 1983. Counts II, III, and V, Strauss' and Edelstein's claims against the Bank and the New Century defendants, like count VII, were premised upon the Act and, thus, the three-year limitation from the date of sale applies.

Plaintiffs contend, though, that even if the date of sale occurred no later than August 1983, their claims are not time barred because the claims relate back to the date upon which Metzger filed his original complaint against the New Century defendants, April 1, 1985. The Bank responds by contending that the claims do not relate back; specifically, the Bank maintains that it was added as a new defendant and Edelstein's and Strauss' claims do not arise out of the same transaction.

■ Under section 2—616(b) of the Code, an amended pleading will not be deemed to relate back to the original pleading so as to avoid the impact of the statute of limitations unless the original and amended pleadings indicate that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence as the original pleading. (Ill. Rev. Stat. 1989, ch. 110, par. 2—616(b); *Keller v. Boatman's Bank* (1989), 186 Ill. App. 3d 448, 542 N.E.2d 1261.) The purpose of section 2—616(b) is to insure fairness to the litigants rather than to unduly enhance the technical considerations of common law pleading. (*Geneva Construction Co. v. Martin Transfer & Storage Co.* (1954), 4 Ill. 2d 273, 287, 122 N.E.2d 540.) The policy of statutes of limitations is to provide a defendant with a sufficient opportunity to investigate the factors upon which his liability may be based while such evi-

dence is still ascertainable; thus, if an amended complaint, with new plaintiffs added, "grew out of the same transaction or occurrence set up in the original pleading," defendants are not prejudiced. (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 125, 302 N.E.2d 64.) Section 2—616(b), however, does not apply to allow the relation back of new claims by new and independent parties. See *Keller*, 186 Ill. App. 3d at 455; *McGinnis v. A.R. Abrams, Inc.* (1986), 141 Ill. App. 3d 417, 490 N.E.2d 115.

In the instant case, we find that the circuit court correctly held that Strauss' and Edelstein's claims did not grow out of the same transaction or series of transactions as alleged in Metzger's original pleading. Rather, as the Bank asserts, each plaintiff in the case at bar is alleged to have suffered a distinct injury as a result of a distinct sale to each plaintiff. Plaintiffs' contention that any subscriber to the New Century venture, whether or not he has ever been heard from, can join Metzger's suit in the circuit court and not be time barred lacks merit and defeats the purpose of the statute of limitations.

Because the purpose behind section 2—616(b) is to prevent a claim from being barred by a technicality, such as the naming of an improper party or of a party in the wrong capacity, and because its purpose is not to allow new claims brought by new and independent parties who delay bringing their claims, we affirm the circuit court's alternative reason for dismissal.

## V

Because we find that counts II, III, and VII were properly dismissed for reasons previously discussed, we need not address plaintiffs' contention that the circuit court erred in granting, in the alternative, summary judgment on those counts on behalf of defendants.

## VI

Plaintiffs lastly contend, again without citation to authority, that the circuit court erred in failing to vacate its ruling or to grant plaintiffs' request to file a fourth amended complaint.

The denial of a motion to file an amended complaint must be affirmed unless plaintiffs can demonstrate an abuse of discretion. (*Lakeside Villas Homeowners Association, Inc. v. Zale Construction Co.* (1986), 145 Ill. App. 3d 505, 509, 495 N.E.2d 1100; *Talas v. Youngstown Sheet & Tube Co.* (1985), 134 Ill. App. 3d 103, 107, 479 N.E.2d 1052.) The primary consideration involved is that the circuit court's decision furthers the ends of justice; among the factors to be considered are whether the proposed amendment would cure the defective plead-

ing, whether it could cause prejudice or surprise to the other party, the timeliness of the proposed amendment, and whether previous opportunities to amend the pleadings occurred. *B.C. v. J.C. Penney Co.* (1990), 205 Ill. App. 3d 5, 16, 562 N.E.2d 533.

In the case at bar, the proposed amendments did not cure any defects in the pleadings. Further, plaintiffs were not prejudiced by the denial of leave to amend since they have failed to argue that the issues raised by the proposed amendments could not have been presented and argued before the circuit court. Defendants, however, would be prejudiced by having to relitigate issues which had been previously adjudicated by the court in its dismissal of the counts in the third amended complaint, which made substantially the same allegations and claims.

Accordingly, because plaintiffs do not have a right to file unlimited amendments, we affirm the circuit court's order denying plaintiffs' motion for leave to file a fourth amended complaint.

Based on the foregoing, we reverse the court's order dismissing counts I through V for failure to state a cause of action; affirm the court's dismissal of count VI, as it relates to the Bank, for failure to state a cause of action; affirm the court's dismissal of count VII as time barred; affirm the court's alternative ruling dismissing counts II, III, and V as time barred; and affirm the court's denial of plaintiffs' motion to vacate or to file a fourth amended complaint. Such determinations effectively revive counts I and IV.

The judgment of the circuit court of Cook County is affirmed in part and reversed in part.

Affirmed in part; reversed in part and remanded for further proceedings.

HARTMAN, P.J., and SCARIANO, J., concur.